UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ALESSANDRA PLISKO,

                      **DECISION AND ORDER**

                Plaintiff,

v.                                                      1:18-cv-00827–JJM

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

        This is an action brought pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) to review the final determination of defendant Commissioner of Social Security that plaintiff was not entitled to disability insurance benefits ("DIB") or Supplemental Security Income ("SSI"). Before the court are the parties' cross-motions for judgment on the pleadings [9, 14].[1] The parties have consented to my jurisdiction [16]. Having reviewed the parties' submissions [9, 14, 15], this action is remanded to the Commissioner for further proceedings consistent with this Decision and Order.

## BACKGROUND

        The parties' familiarity with the 486-page administrative record [7] is presumed. Plaintiff filed an application for DIB and SSI on May 27, 2014. Administrative Record [7], p. 10. The claim was initially denied. Id., pp. 10, 183. Administrative Law Judge ("ALJ") Melissa Lin Jones conducted a hearing on March 23, 2017. Id., pp. 10, 129-70. Although plaintiff was

---

[1]     Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

represented by counsel from December 1, 2016 through February 14, 2017 (id., pp. 204, 216) and again after September 21, 2017 (id., p. 32), she was unrepresented at the hearing and waived her right to representation. Id., pp. 10, 131-41, 239. ALJ Jones heard testimony from the plaintiff and vocational expert Rachel A. Duchon. Id., pp. 129-70. On June 8, 2017, ALJ Jones issued her Notice of Decision denying plaintiff's claims. Id., pp. 10-25.

### A. Medical Evidence in the Record Prior to the Hearing

Plaintiff alleged disability due to PTSD, depression with alcohol use, mental health issues, and a cervical spine issue. Administrative Record [7], p. 96. Prior to the March 23, 2017 hearing, there were only two records in the medical evidence section of plaintiff's claim file: 1) records of emergency department visits to Mercy Hospital on December 27, 2010 and March 29, 2012 (id., pp. 296-325); and 2) two pages from the records of Dr. Rados, i.e. page 1 of 2 from a July 30, 2014 treatment and page 2 of 2 from a Southtowns Radiology Associates, LLC report (id., pp. 326-27). The single page from Dr. Rados's treatment note, which appeared on letterhead from Catholic Health and identifies Mercy Comprehensive Care Center in the footer, included a long list of medications prescribed to plaintiff. Id., p. 326. Among these were medications typically used to treat anxiety (Lorazepam and Buspirone HCl), depression (Duloxetine HCl and Sertraline HCl); high blood pressure (Lisinopril, Amlodipine Besylate); high cholesterol (Atorvastatin Calcium); gastroesophageal reflux disease ("GERD") (Omeprazole), and asthma (albuterol sulfate). *See* https://medlineplus.gov/druginformation.html and [7], p. 326. The page from the Southtowns Radiology report is dated January 19, 2011 and indicates a "large central disc extrusion producing canal stenosis at C5-C6", a "small central disc protrusion at C3-C4", and a "possible central disc protrusion at T6-T7". [7], p. 327. A Disability Worksheet in the Administrative Record ([7], pp. 43-45) states that Dr. Rados "has no

medical records available", but does not identify the source of, or reason for, this statement. Id., p. 43.

The Mercy Hospital Emergency Department records document treatment on: December 27, 2010 for left-sided chest and arm pain, with numbness and tingling in plaintiff's hand (id., pp. 308-21); March 29, 2012 for abdominal pain (id., pp. 296-307); and April 26, 2012 for a colonoscopy (id., pp. 322-25). The December 27, 2010 records include a report from a Cervical Spine CT that included findings of a "central and left paracentral disc herniation" at C2-C3 and evidence of a "central and paracentral disc herniation" at C5-C6, with "mild to moderate spinal stenosis". Id., p. 321.

Information included on a November 3, 2014 "Disability Report – Appeals" form (id., pp. 277-83) states that plaintiff treated with Dr. Rados since 2004 and at Mercy Comprehensive Care Center beginning on July 30, 2014, with additional visits scheduled for August 6, 2014 and August 13, 2014. Plaintiff indicated that "Dr. Creighton", instead of Dr. Rados, had become her primary care physician, "as Dr. Rados is gone." Id., p. 278. Despite this information, the Administration did not request medical evidence from Mercy Comprehensive Care, nor did it request Dr. Rados's treatment records from Catholic Health, Mercy Comprehensive Care Center, or Dr. Creighton.

**B. The ALJ's Development of the Record**

ALJ Jones questioned plaintiff about her medical and mental health treatment providers. Id., pp. 142-44. Plaintiff identified Dr. Rados as her physician from at least 2009 through July 2014, and Dr. Mercer and Lakeshore Behavioral Health as her only treatment providers since July of 2014. Id., pp. 142-43. She treated with Drs. Mercer and Rados for both physical and mental health issues. Id., p. 150.

On March 27, 2017, the Administration requested records from Dr. Ince-Mercer (id., p. 103-13) and from Lakeshore (id., pp. 114-19). The Administration also requested that Dr. Ince-Mercer complete a physical Medical Source Statement and that Lakeshore complete a mental Medical Source Statement. Id., pp. 105-10, 116-18.

By letter dated April 19, 2017, Lakeshore declined to provide the opinion evidence requested on the mental Medical Source Statement, explaining, "[i]n cases where an individual is seeking a disability determination, we suggest that a private psychiatric consultation be sought. We cannot provide adequate information related to the questions posed on this form, and do not observe or have any opportunity to determine how a person responds in a work environment." Id., p. 328. However, Lakeshore provided approximately 80 pages of records. Id., pp. 329-417. Diagnoses in the Lakeshore records include depressive disorder, alcohol dependence, and post traumatic stress disorder (although the record is unclear whether any provider at Lakeshore formally diagnosed PTSD, or whether that diagnosis was still being ruled out). The Lakeshore records state that plaintiff was being seen weekly by a variety of counselors in both individual and group settings. However, no treatment notes from those counselors appear in the records.

The Administration received from Dr. Ince-Mercer treatment notes from September 28, 2016 through March 31, 2017 (id., pp. 417-57) and various diagnostic reports and emergency department records (id., pp. 458-84). Dr. Ince-Mercer diagnosed the plaintiff with both chronic PTSD and recurrent and moderate major depressive disorder, along with several physical conditions. Id., pp. 427, 432, 440, 445, 450, 456. Dr. Ince-Mercer did not return the Medical Source Statement, and the Administration did not follow up with her to obtain this evidence.

**C. The ALJ's Notice of Decision**

On June 8, 2017, ALJ Jones issued her Decision concluding that plaintiff was not disabled. Administrative Record [7], pp. 10-22. ALJ Jones analyzed the evidence using the well-settled, five-step, sequential evaluation process. Id., pp. 11-12, *citing* 20 C.F.R. §§ 404.1520, 416.920.[2] She determined that plaintiff had only two severe impairments: post-traumatic stress disorder ("PTSD") and depression. Id., p. 14. ALJ Jones also considered medical evidence in the record concerning hypertension, hypercholesterolemia, GERD, obesity, cervical disc herniations, and arthritis. Id., pp. 13-14. ALJ Jones noted that the record contained "little medical evidence through September 2016", and "no evidence showing persistent treatment with a physician for any chronic physical impairment until September 2016." Id., pp. 12-13.

At step three, ALJ Jones performed a "paragraph B" analysis. ALJ Jones found plaintiff had moderate limitations in understanding, remembering, or applying information; and concentrating, persisting, or maintaining pace. She found plaintiff had mild limitations interacting with others; and adapting or managing herself. Id., pp. 15-16.

ALJ Jones based her conclusions almost entirely upon plaintiff's testimony and the self-reported information that plaintiff's providers incorporated into her medical records. ALJ Jones cited only two pieces of medical opinion evidence. With respect to understanding, remembering, and applying information, ALJ Jones noted that plaintiff's "treating psychiatric

---

[2] The five steps are: 1) is plaintiff engaged in substantial gainful activity; 2) does plaintiff have a medically determinable, severe impairment or combination of impairments; 3) do plaintiff's severe impairments meet or equal the criteria of impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; 4) after determining plaintiff's residual functional capacity, can plaintiff perform his or her past relevant work; and 5) can plaintiff perform any work, considering her residual functional capacity, age, education, and work experience? *See* 20 C.F.R. §§ 404.1520, 416.920; Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000). The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. *See* Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

nurse practitioner/psychologist estimated that the claimant had average to above average intelligence." Id., p. 15. With respect to concentrating, persisting, or maintaining pace, ALJ Jones cited "mental status examinations" since 2014 revealing that plaintiff's "attention and concentration varied between fair to intact." Id.

In order to continue her analysis at steps four and five, ALJ Jones next found that plaintiff "has the residual functional capacity to perform a full range of work at all exertional levels. She can perform simple routine tasks, but not at a production rate pace. The claimant is limited to simple work related decisions when using judgment or when dealing with changes in the work setting." Id., p. 16.

To support her conclusion, ALJ Jones cited plaintiff's testimony, and the reports plaintiff made to her providers concerning her activities and symptoms, as reported in the medical records. With respect to plaintiff's functional abilities, ALJ Jones cited the 2014 Lakeshore medical status examinations (id., pp. 18, 369-70) and mini-mental status examinations performed by Dr. Ince-Mercer from December of 2016 through March 31, 2017 (id., pp. 19, 425, 431, 435, 439, and 455). ALJ Jones also considered the Global Assessment of Functioning ("GAF") scores that were assigned by various Lakeshore providers. Id., pp. 19-20. However, ALJ Jones gave these scores "little weight" because they "are not intended for forensic purposes" and "do not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis." Id., p. 20.

**D.**     **The Appeals Council's Determination**

Plaintiff requested review of ALJ Jones's Decision ([7], p. 241) and retained new counsel on September 21, 2017 (id., pp. 31-37). Her new attorney did not submit any additional

medical evidence. Id., pp. 4-5, 294-95. On May 31, 2018, the Appeals Council denied plaintiff's request for review. Id., p. 1.

## ANALYSIS

### A. Standard of Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. § 405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

It is well settled that an adjudicator determining a claim for DIB and/or SSI employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§ 404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. *See* Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

Plaintiff argues that ALJ Jones committed a legal error by failing to: 1) request additional treatment records; and 2) obtain a medical opinion concerning her functional limitations. As a result of these failures, plaintiff argues that ALJ Jones's disability analysis was not supported by substantial evidence. Plaintiff's Memorandum of Law [9-1], pp. 10-19. The Commissioner argues that ALJ Jones properly developed the record, that there are no obvious gaps in the medical evidence, and that the ALJ's findings are supported by substantial evidence. Commissioner's Brief [14-1], pp. 18-27. I agree with plaintiff that the ALJ failed to adequately develop the record, and remand this matter for further proceedings.

**B. Did ALJ Jones Fail to Develop a Sufficient Record?**

It is well settled that "[t]he claimant has the general burden of proving that he or she has a disability within the meaning of the Act . . . . However, because a hearing on disability benefits is a nonadversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotations and alterations omitted). "In fact, where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history". Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999). The duty to develop the record is heightened where a claimant is unrepresented at the hearing level. Moran v. Astrue, 569 F.3d 108, 113 (2d Cir. 2009) (*citing* Cruz v. Sullivan, 912 F.2d 8 (2d Cir. 1990)). However, "[t]his duty exists even when the claimant is represented by counsel". Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996). "The ALJ's duty to develop the record is also heightened where mental conditions are present." Martin v. Colvin, 2017 WL 370809, *3 (W.D.N.Y. 2017). Here, plaintiff was unrepresented at her hearing ([7], pp. 10, 131-41, 239), and remained unrepresented until September 21, 2017, well after the ALJ issued her June 8, 2017 Notice of Decision. *See* Fee Agreement and Appointment of Representative [7], pp. 32-33.

Where an ALJ fails to develop adequate medical evidence, courts in this district have not hesitated to remand for further development of the record. In Martin, supra, the record contained mental health treatment notes from a counselor, LMSW Crimmins, but no treatment records from plaintiff's treating psychiatrist, Dr. Gupta. The plaintiff was unrepresented at the hearing level. The court agreed that the ALJ failed to sufficiently develop the record and remanded the case for further development of the record:

> The letters submitted by Dr. Gupta and LMSW Crimmins indicate
> that plaintiff was seen on a consistent, bi-monthly basis by Dr.

-8-

> Gupta, who prescribed and managed plaintiff's antipsychotic
> medications. Yet, no treatment records from Dr. Gupta appear in
> the record. The Court agrees with plaintiff that this obvious gap in
> the record triggered the ALJ's heightened duty to fully develop the
> record as it pertained to plaintiff's mental health condition.

Id. at *3-4.

Here, the record is similarly deficient. Dr. Rados was plaintiff's primary provider for both physical and mental conditions from 2009 through 2014. [7], pp. 142-43, 278, 326. Dr. Rados's records were obviously incomplete. The record contains a note that Dr. Rados "has no medical records available", but does not identify the source of, or reason for, this statement. Id., p. 43. The single page from Dr. Rados's treatment notes is on Catholic Health letterhead and identifies Mercy Comprehensive Care Center in the footer. Id., p. 326. The record also contains evidence that Dr. Creighton became plaintiff's new physician once Dr. Rados had "gone." Id., p. 278. The Administration did not request Dr. Rados's records of plaintiff's treatment from any of these sources. The ALJ's failure to request Dr. Rados's records from any of the potential custodians of those records, or to confirm they were no longer available, was inconsistent with her heightened duty to develop the record.

**C. Did ALJ Jones Fail to Obtain Opinion Evidence?**

In addition, plaintiff's medical records contain no analysis of the plaintiff's physical or psychological functional limitations. Lakeshore specifically declined to comment upon plaintiff's ability to do work-related activities. [7], p. 328. Dr. Ince-Mercer's records did not contain an opinion concerning plaintiff's functional limitations. ALJ Jones did not request that Dr. Ince-Mercer complete the mental Medical Source Statement and did not follow up with her when she failed to return the physical Medical Source Statement. Nor did ALJ Jones even request a consultative examination or records review to fill this gap in the evidence.

Absent medical evidence of a plaintiff's functional limitations, "[n]either the trial judge nor the ALJ is permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion." Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000); *see also* Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008) (*citing* Shaw, supra); Lewis v. Commissioner of Social Security, 2018 WL 3655780, *3 (W.D.N.Y. 2018) ("[t]he ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion.") (*citing* Burgess, supra).

Here, there is no professional medical or psychiatric opinion in the record linking the medical evidence (i.e., plaintiff's mental status examinations) to her functional abilities. Accordingly, "the ALJ should have sought out a functional opinion" from one of plaintiff's treating mental health providers "or at the very least ordered a consulting psychiatric examination in order to obtain a qualified assessment of plaintiff's capabilities." Martin, 2017 WL 370809 at *4. The ALJ's failure to develop opinion evidence of plaintiff's functional limitations was inconsistent with her heightened duty to develop the record.

ALJ Jones's failure to develop the record concerning plaintiff's additional medical records and functional, work-related limitations was a legal error. Therefore, I remand this case to the Commissioner for further development of the record.

**CONCLUSION**

For the reasons stated above, plaintiff's motion for judgment on the pleadings [9] is granted to the extent that this matter is remanded to the Commissioner for further proceedings consistent with this Decision and Order, and is otherwise denied. Accordingly, the

Commissioner's motion for judgment on the pleadings [14] is also denied. Because this matter is remanded for further consideration, I do not reach the parties' remaining arguments.

**SO ORDERED**.
Dated: January 28, 2020

                                                                   /s/ Jeremiah J. McCarthy
                                                            JEREMIAH J. MCCARTHY
                                                            United States Magistrate Judge